IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TERESSA L. ARMSTRONG,           )
                                )
                    Plaintiff,  )
                                )
vs.                             )        Case No. 07-1385-WEB
                                )
MICHAEL J. ASTRUE,              )
Commissioner of                 )
Social Security,                )
                                )
                    Defendant.  )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On September 8, 2006, administrative law judge (ALJ) Linda
L. Sybrant issued her decision (R. at 14-21).  Plaintiff is
insured for disability insurance benefits through December 31,
2005 (R. at 20).  At step one, the ALJ found that plaintiff did
not engage in substantial gainful activity since May 10, 2000,

the alleged onset date (R. at 15).  At step two, the ALJ found
that plaintiff had the following severe impairments: status post
right foot stress fracture and bilateral carpal tunnel syndrome,
status post release in March 2003 and April 2003 (R. at 17).  The
ALJ further determined that anxiety and breathing problems are
not severe impairments (R. at 17).  At step three, the ALJ
determined that plaintiff's impairments do not meet or equal a
listed impairment (R. at 17).  After determining plaintiff's RFC
(R. at 19), the ALJ found at step four that plaintiff was unable
to perform past relevant work (R. at 19).  At step five, the ALJ
found that plaintiff can perform light and sedentary jobs that
exist in significant numbers in the national and regional
economies (R. at 19).  Therefore, the ALJ concluded that
plaintiff was not disabled (R. at 19).

**III.  Did the ALJ err in his analysis of the medical evidence,
including the opinions of Dr. Ellefsen, plaintiff's treating
physician and surgeon?**

The opinions of physicians, psychologists, or psychiatrists
who have seen a claimant over a period of time for purposes of
treatment are given more weight over the views of consulting
physicians or those who only review the medical records and never
examine the claimant.  The opinion of an examining physician is
generally entitled to less weight than that of a treating
physician, and the opinion of an agency physician who has never

seen the claimant is entitled to the least weight of all.
Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A
treating physician's opinion about the nature and severity of the
claimant's impairments should be given controlling weight by the
Commissioner if well supported by clinical and laboratory
diagnostic techniques and if it is not inconsistent with other
substantial evidence in the record.  Castellano v. Secretary of
Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20
C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating
physician opinion is not given controlling weight, the ALJ must
nonetheless specify what lesser weight he assigned the treating
physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083
(10th Cir. 2004).  A treating source opinion not entitled to
controlling weight is still entitled to deference and must be
weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

    After considering the above factors, the ALJ must give good
reasons in his decision for the weight he ultimately assigns the

6

opinion.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  <u>Watkins</u>, 350 F.3d at 1301.

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight.  <u>Soc. Sec. Rul.</u> 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2.  However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.

In this case, the ALJ made the following RFC findings:

> The claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for 3 hours in an 8 hour day and sit for 6 hours in an 8 hour day.  The claimant can perform handling and fingering occasionally.

7

(R. at 19).

Dr. Ellefsen was plaintiff's treating physician and surgeon
from 2000-2004 (R. at 196-250).  He indicated on February 4, 2005
that plaintiff could frequently lift 2 pounds, occasionally lift
10 pounds, stand and/or walk for 2 hours in an 8 hour day, and 15
minutes continuously, and could sit for 8 hours and for 2 hours
continuously (R. at 285).  He also opined that plaintiff could
never climb, kneel, crouch, crawl; that she could occasionally
balance and stoop; and that she had a limited ability to handle
and finger (R. at 285A).

Dr. Prostic indicated on June 21, 2002 that plaintiff is
unable to return to work that requires standing and/or walking
more than 30 minutes per hour, and is unable to do more than
minimal stair-climbing, squatting, kneeling or carrying.  He also
indicated she should avoid repetitious forceful gripping with
either hand (R. at 158).  On August 26, 2003, Dr. Prostic
indicated that plaintiff had good relief from right hand surgery,
but not from the left hand surgery.  He noted she had work
restrictions against standing on tiptoes or squatting (R. at
154).  He found that plaintiff continues to have difficulty from
the foot and will need permanent use of orthotics.  He also found
that plaintiff has a 15% permanent partial impairment of the left
upper extremity and a 5% permanent partial impairment of the
right upper extremity (R. at 155).

8

The state agency RFC assessment[1] found that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds.  It found that plaintiff could stand and/or walk for 6 hours and sit for 6 hours in an 8 hour workday (R. at 261).  It found that plaintiff could not climb ladders/ropes/scaffolds, and could occasionally climb ramps and stairs, and balance (R. at 262).  It also noted that plaintiff should avoid repetitive grasping or forceful pushing and no use of vibratory tools (R. at 263).

The ALJ stated the following in regards to the weight she assigned to the opinions of the various physicians:

> The undersigned gives little weight to the opinions of Dr. Ellefson regarding the claimant's functional limitations to sedentary work and inability to perform any work, because they are unsupported by other substantial evidence of record and her activities of daily living. Dr. Ellefsen, a worker's compensation physician, likely meant to opine that the claimant could not return to her past work as a nurses aide, as suggested in his written notes. Also, the undersigned notes that the standards for disability under worker's compensation are different than those used by the Social Security Administration. In addition, Dr. Ellefsen has not treated the claimant since June 2003. Moreover, in a letter dated July 21, 2004, Dr. Ellefson indicated that the claimant was able to ambulate and wear regular shoes. The undersigned gives controlling weight to the opinions of Dr. Prostic and greater weight to the

---

[1]This assessment was prepared on September 20, 2004 and affirmed on December 8, 2004 (R. at 267).

> consultative examiners, as their opinions are
> supported by substantial evidence of record.
>
> The undersigned has considered the findings,
> opinions, and assessments of non-examining
> State Agency program physician and
> psychologist(Exhibits 11F and 12F) and has
> accorded them weight in reaching the
> conclusion that the claimant is not disabled,
> because they are generally consistent with
> and supported by the findings, opinions, and
> conclusions of treating and medical sources
> contained in the record.

(R. at 16-17).

The ALJ stated that she gave "little" weight to the opinions

of Dr. Ellefsen regarding plaintiff's functional limitations

because they were not supported by the other evidence.  By

contrast, the ALJ stated she gave "controlling" weight to the

opinion of Dr. Prostic and accorded weight to the state agency

RFC assessment because their opinions were generally consistent

with and supported by the medical sources.  Plaintiff argues that

the ALJ failed to specify what weight, if any, she gave to the

opinions of Dr. Ellefsen ("the ALJ did not specify which portions

of the opinion she believed", Doc. 12 at 1), and further argues

that the ALJ should have given some consideration even if not

controlling or greater weight to the opinions of Dr. Ellefsen

(Doc. 12 at 2).  Plaintiff asserts that the ALJ did not consider

the totality of the medical evidence when evaluating Dr.

Ellefsen's opinion (Doc. 12 at 1).

The ALJ is required to indicate what weight he gave to the

opinions of Dr. Ellefsen, the treating physician, and must
provide a legally sufficient explanation for rejecting or
discounting his opinions.  In reviewing the medical opinions and
comparing them with the RFC findings of the ALJ, the court cannot
determine from the ALJ's decision what weight the ALJ assigned to
any of the medical opinion evidence, including the opinions of
Dr. Ellefsen, Dr. Prostic, or the state agency physicians.[2]  The
court also finds that the ALJ failed to adequately explain why
certain opinions of Dr. Ellefsen were discounted or rejected when
those opinions had some support in the opinions of Dr. Prostic
and/or the state agency physicians.

    The ALJ found that plaintiff can lift and carry up to 20
pounds occasionally and 10 pounds frequently (R. at 19).  That
finding is consistent with the state agency RFC assessment (R. at
261).  By contrast, Dr. Ellefsen limited plaintiff to lifting and
carrying 10 pounds occasionally and 2 pounds frequently (R. at
285).  The ALJ stated that he gave this opinion little weight
because it was not supported by other evidence in the record (R.

---

[2]The ALJ's RFC finding that plaintiff can perform handling
and fingering occasionally most closely matches with Dr.
Ellefsen's opinion that plaintiff has a limited ability to handle
or finger (R. at 19, 285A).  (By comparison, Dr. Prostic had
stated that plaintiff should avoid repetitious forceful gripping
with either hand (R. at 158), and the state agency physician had
opined that plaintiff avoid repetitive grasping or forceful
pushing & no use of vibratory tools (R. at 263).)  However, for
reasons set forth below, the ALJ failed to provide a legally
sufficient explanation for discounting or rejecting other
opinions by Dr. Ellefsen.

11

at 16).  However, Dr. Prostic, to whom the ALJ gave "controlling" weight, stated that plaintiff was unable to do more than "minimal" carrying (R. at 158), and further noted that plaintiff had not had good relief from the surgery on her left hand (R. at 154); plaintiff is left hand dominant (R. at 253).  In light of the controlling weight the ALJ supposedly gave to the opinions of Dr. Prostic, including his opinion that plaintiff is unable to do more than minimal carrying, the ALJ failed to provide a sufficient explanation for why her RFC findings adopted less restrictive limits on lifting and carrying.

Dr. Ellefsen also found that plaintiff could never climb, kneel, crouch, and crawl, and could only occasionally balance and stoop (R. at 285A).  Dr. Prostic found that plaintiff is unable to do more than minimal stair-climbing, squatting, or kneeling (R. at 158).  Even the state agency RFC assessment found that plaintiff could not climb ladders, ropes, or scaffolds; could only occasionally climb ramps and stairs; and could only occasionally balance.  The ALJ's RFC findings, however, did not include any postural limitations.  Thus, without any explanation, not only did the ALJ reject the postural limitations of Dr. Ellefsen, she also rejected the postural limitations of Dr. Prostic, to whom she gave controlling weight, and the postural limitations of the state agency physicians.

Dr. Ellefsen opined that plaintiff could stand and/or walk

for 2 hours in an 8 hour day, and could stand and/or walk
continuously for 15 minutes (R. at 285).  Dr. Prostic, to whom
the ALJ gave controlling weight, stated that plaintiff is unable
to return to work that requires standing and/or walking more than
30 minutes per hour (R. at 158).  The ALJ's RFC findings
indicated that plaintiff could stand and/or walk for 3 hours in
an 8 hour day.  However, again, without any explanation, the ALJ
rejected the opinions of both Dr. Ellefsen and Dr. Prostic and
placed no limitations on plaintiff's ability to stand and/or walk
continuously or in a 1 hour period.

According to SSR 96-8p the RFC assessment "must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts...and nonmedical
evidence."  The ALJ must explain how any material inconsistencies
or ambiguities in the evidence in the case record were considered
and resolved.  The RFC assessment must always consider and
address medical source opinions.  If the RFC assessment conflicts
with an opinion from a medical source, the ALJ must explain why
the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.
The ALJ has clearly failed to demonstrate how the evidence
supports her RFC findings, or what weight she assigned to the
various medical opinions.  Furthermore, the ALJ failed to provide
a legally sufficient explanation for discounting or rejecting
certain opinions of Dr. Ellefsen, plaintiff's treating physician.

13

See Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). Therefore, this case shall be remanded in order for the ALJ to clearly articulate the basis of her RFC findings in accordance with SSR 96-8p, and specifically indicate what weight she is giving to the various medical opinions, including those of Dr. Ellefsen, Dr. Prostic, and the state agency physicians.

Dr. Ellefsen also found that plaintiff had environmental restrictions; however, those restrictions are illegible (R. at 285A). The ALJ did not even mention these limitations and failed to provide any explanation for not including any environmental limitations in her decision. On remand, the ALJ should address these limitations, and, if necessary, recontact Dr. Ellefsen in order to ascertain the nature of those limitations. 20 C.F.R. § 404.1512(e). The statements of Dr. Ellefsen in sections D and E of his medical source statement-physical are also illegible to the court (R. at 285A); thus, on remand, the ALJ may need to recontact him in order to obtain legible answers to those questions.

The ALJ also stated that she discounted the opinions of Dr. Ellefsen because he "likely meant to opine that the claimant could not return to her past work as a nurse's aide, as suggested in his written notes" (R. at 16). However, the ALJ failed to cite to any specific notes supporting that assertion. A review of the medical source statement-physical prepared by Dr. Ellefsen

14

does not include any legible statement that Dr. Ellefsen only
meant to opine that plaintiff could not return to her past work.
The court finds no evidence in the record that Dr. Ellefsen's
opinions set forth on February 4, 2005 were only meant to
indicate that plaintiff could not return to her past work.

**IV.  Did the ALJ err in his credibility analysis?**

A reviewing court does not weigh the evidence and may not
substitute its discretion for that of the agency.  Credibility
determinations are peculiarly the province of the finder of fact,
and a court will not upset such determinations when supported by
substantial evidence.  However, findings as to credibility should
be closely and affirmatively linked to substantial evidence and
not just a conclusion in the guise of findings.  Kepler v.
Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ
cannot ignore evidence favorable to the plaintiff.  Owen v.
Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require
a formalistic factor-by-factor recitation of the evidence.  So
long as the ALJ sets forth the specific evidence he relies on in
evaluating the claimant's credibility, the ALJ will be deemed to
have satisfied the requirements set forth in Kepler.  White v.
Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel,
206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore
explain and support with substantial evidence which part(s) of

claimant's testimony he did not believe and why.  <u>McGoffin v.</u>
<u>Barnhart</u>, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for
the ALJ to use standard boilerplate language which fails to set
forth the specific evidence the ALJ considered in determining
that a claimant's complaints were not credible.  <u>Hardman v.</u>
<u>Barnhart</u>, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand,
an ALJ's credibility determination which does not rest on mere
boilerplate language, but which is linked to specific findings of
fact fairly derived from the record, will be affirmed by the
court.  <u>White</u>, 287 F.3d at 909-910.

When this case is remanded, the ALJ shall conduct a new
credibility analysis after giving proper consideration to the
opinions of Dr. Ellefsen, Dr. Prostic, and the state agency
physicians.  Plaintiff raises other arguments concerning the
ALJ's analysis of plaintiff's credibility which can also be
addressed when this case is remanded.  The court will not reweigh
the evidence or substitute its judgment for that of the
Commissioner.  <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th
Cir. 2005).  However, on remand, the ALJ should consider the
finding of Dr. Mills, who stated that a pain drawing did not
reveal findings suggestive of symptom magnification (R. at 165),
and that the information plaintiff reported to him was consistent
with the medical records provided (R. at 161).

The ALJ also relied on the fact that plaintiff performs

16

housework and takes care of her disabled husband who is schizophrenic to find that plaintiff is more physically and mentally capable than she has alleged (R. at 18).  However, the ALJ failed to cite to any evidence in the record that plaintiff's husband requires special care.  Furthermore, the ALJ failed to mention that plaintiff testified that her husband does most of the housework, including sweeping the floors, mopping, vacuuming, yard work, and taking items out of the oven so she won't drop them (R. at 303-304, 308).  On remand, the ALJ must take this evidence into consideration when evaluating plaintiff's credibility.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on July 24, 2008.


s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge

17